IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNICORN GLOBAL, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> GOLABS, INC., d/b/a GOTRAX, LLC, *et al.*, § <br> § <br> Defendants. § | Civil Action No. 3:19-CV-0754-N |

# MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs Unicorn Global, Inc. ("Unicorn"); Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou Chic"); and Shenzhen Uni-Sun Electronic Co., Ltd.'s ("Shenzhen") (collectively, "Plaintiffs") Rule 12(b)(6) motion to dismiss Defendants GoLabs, Inc. d/b/a GoTrax, LLC ("GoLabs"); Walmart, Inc.; Wal-Mart Stores Texas, LLC; and Wal-Mart.com USA LLC's (collectively, "Defendants") counterclaims [51]. Plaintiffs seek dismissal of eight of Defendants' counterclaims, including the three inequitable conduct claims and the Lanham Act claim, common law unfair competition claim, tortious interference with contract claim, *Walker Process* antitrust claim, and sham litigation antitrust claim. For the reasons below, the Court grants in part and denies in part the motion.

## I. ORIGINS OF THE PATENT DISPUTE

This case revolves around patents owned by competing manufacturers Hangzhou Chic, a Chinese company, and GoLabs, a Texas corporation. Both entities produce and

MEMORANDUM OPINION AND ORDER – PAGE 1

sell hoverboards, which are two-wheeled, electric self-balancing vehicles. Defs.' Resp. Mot. Dismiss 27, 29, 33 [60.2]. Hangzhou Chic claims rights to manufacture hoverboards under three patents invented by Jiawei Ying ("Ying"): U.S. Patent Nos. 9,376,155 ('155 patent), 9,452,802 ('802 patent), and D737,723 (D'723) (collectively, the "asserted patents"). Pltfs.' Mot. Dismiss 1–2 [51]. GoLabs asserts rights to manufacture its products under U.S. Patent No. 8,738,278 ('278 patent), patented by Shane Chen ("Chen"), and markets its products through its own website and a number of third-party online sellers, including Amazon and Wal-Mart. *Id.* at 2; Defs.' Resp. Mot. Dismiss 33 [60.2].

Between October 2018 and June 2019, Hangzhou Chic and its patent enforcer, Unicorn, filed a series of complaints with Amazon against various GoLabs hoverboard products, asserting they infringed on various Hangzhou Chic patents including the '155, '802, and D'723 patents. Defs.' Resp. Mot. Dismiss 33–35 [60.2]. Amazon delisted GoLabs's products multiple times after receiving these email complaints but relisted the products each time GoLabs cleared the complaints with it. *Id.* at 34–35. In April 2019, Hangzhou Chic also contacted Walmart claiming that GoLabs's products infringed its patents. *Id.* at 35. Following these complaints, Hangzhou Chic and Unicorn, along with Hangzhou Chic's licensee, Shenzen, filed suit against GoLabs, Walmart, and Amazon. Amazon was subsequently dismissed from the suit shortly after it delisted all GoLabs hoverboard products from its site. *Id.* at 35–36. GoLabs and Walmart filed counterclaims in their answer to Defendants' complaint, which Defendants now seek to dismiss.

## II. RULE 12(B)(6) LEGAL STANDARD

When addressing a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### III. THE COURT DENIES PLAINTIFFS' MOTION TO DISMISS THE INEQUITABLE CONDUCT COUNTERCLAIMS AS TO THE '155 AND '802 PATENTS AND GRANTS THE MOTION AS TO THE D'723 PATENT

Inventors commit inequitable conduct when they breach their duty of candor and good faith "to disclose to the [PTO] all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) (declaring that inequitable conduct includes both affirmative misrepresentations and failures to disclose). A party alleging inequitable conduct must

MEMORANDUM OPINION AND ORDER – PAGE 3

establish that an inventor "(1) knew of the withheld information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009). These allegations must satisfy the heightened pleading standards of Rule 9(b) by identifying "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328; *see also Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). District courts "may not infer intent *solely* from materiality." *Therasense, Inc.*, 649 F.3d at 1290 (emphasis added). Here, the Court finds that Defendants have satisfied the heightened pleading requirements and plausibly alleged inequitable conduct as to '155 and '802 patents but have not sufficiently pled facts to show inequitable conduct as to the D'723 patent.

### A. Defendants Have Plausibly Alleged that the '155 Patent is Unenforceable for Inequitable Conduct

This inequitable conduct claim is premised on an alleged misrepresentation of a prior art patent and two alleged omissions of material information, all purportedly committed by the inventor of Plaintiffs' patents, Ying. Defendants first allege that during the prosecution of the '155 patent, Ying misrepresented a pivotal claim of the prior art patent, U.S. Patent No. 8,738,278 ('278 patent) patented by Chen, because he characterized it to the PTO as lacking foot placements that rotate relatively, in contrast to his '155 asserted patent. Defendants also allege that Ying intentionally withheld information about a prior art prototype, the Hovertrax, and webpage displaying the prototype's schematics as

MEMORANDUM OPINION AND ORDER – PAGE 4

well as the Chinese Patent Office's rejection of his Chinese priority application. The Court finds that it can plausibly infer from Defendants' pleadings that Ying's alleged misrepresentation of prior art and omission regarding the prototype and its webpage were material and made knowingly and with the intent to deceive the PTO.[1] Accordingly, Defendants have stated a claim for inequitable conduct as to the '155 patent.

First, the Court finds that Defendants plausibly allege the materiality of the misrepresentation and omission at issue. Plaintiffs' primarily attack materiality by arguing that Ying disclosed the '278 patent to the PTO in his '155 patent application. Consequently, Plaintiffs' claim that any misrepresentation about the '278 patent or the failure to disclose the Hovertrax prototype based on that patent would not have provided noncumulative information to the patent Examiner.

While the '278 patent was disclosed in the '155 patent application, Defendants allegation is that Ying's mischaracterization of the '278 patent in his application influenced the Examiner despite the prior art disclosure. Specifically, Defendants assert that the '278 patent claims a "two-wheeled, self-balancing vehicle" with foot platforms that rotate relatively to each other to permit users to balance the vehicle using their feet. Ying, however, allegedly told the Examiner that prior art vehicles — including those claimed by the '278 patent — had foot platforms did *not* rotate relatively and that users could *not*

---

[1] Because the Court finds that these allegations establish Defendants' inequitable conduct claim, it does not address the allegations regarding the Chinese Patent Office's rejection of the priority patent application.

MEMORANDUM OPINION AND ORDER – PAGE 5

control prior art balance vehicles merely through their feet.[2]  Significantly, the Defendants also allege that in the '155 patent notice of allowance, the Examiner asserted that claim 1 of the '155 patent application was distinguishable from the prior art, including Chen's '278 patent, in part because it had two sides "rotatable relative to each other."  The Court agrees that one can plausibly infer from the facts pled that, had Ying not told the PTO that the '278 patent could not rotate relatively, the Examiner would have found otherwise and would not have found that the '155 asserted patent was sufficiently distinct from the '278 patent.

The Court also finds that Defendants have plausibly alleged that the failure to disclose the Hovertrax prototype was but-for material to the Examiner's patentability decision.[3]  Although the Hovertrax practices the '278 patent, the Defendants allege that the prototype and the schematics and videos displayed on the Kickstarter webpage show additional details, like symmetrically disposed inner covers,[4] that are not explicitly

---

[2] Plaintiffs state in their reply brief that the Background of the Invention section of the '155 patent application is referencing a prior art Segway-style device.  Pltfs.' Reply 7 [77].  That portion, however, references "prior art" generally and does not confine its factual assertions to Segway devices.  *See* Am. Compl. Ex. 1 10 [12.1].

[3] Plaintiffs argue that Chen's ITC complaint, which discussed the Hovertrax prototype and Kickstarter webpage, does not mention any noncumulative information.  Defendants, however, reference the ITC complaint to show only Ying's knowledge of the prototype and Kickstarter page, as discussed below.  It is the prototype itself, not the ITC complaint, that Defendants claim is material and should have been disclosed.

[4] Plaintiffs claim in their reply brief, citing Defendants' response brief and Chen's declaration, that Defendants have abandoned their allegation that the Hovertrax contains an inner cover and that Chen confirmed the Hovertrax does not have inner covers similar to those in claimed by the '155 patent.  Pltfs.' Reply 6–8 [77].  The Court does not find any suggestion in either Defendants' response brief or Chen's affidavit, however, that the

MEMORANDUM OPINION AND ORDER – PAGE 6

disclosed in the '278 patent claims. Further, Defendants claim that the Examiner found that the '155 application was not obvious over prior art based on his conclusion that the prior art, including the '278 patent, did not have "a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other." These facts support a plausible inference that had the information been disclosed, the Examiner may have reached a different outcome on the '155 patent application.

The Court next finds that Defendants have plausibly pled that Ying knew of the material misrepresentation and omission. In their counterclaims, Defendants allege that Ying himself made the misrepresentation regarding the prior art '278 patent in his '155 patent application and that Ying knew of the Hovertrax prototype prior to the issuance of the '155 patent on June 28, 2016, while he still had the duty to disclose material information to the PTO. While Ying's knowledge of the misrepresentation is self-evident from this claim, Defendants' assertion regarding the Hovertrax is bolstered by several factual allegations supporting a plausible inference that Ying knew of the prototype and its similarities to his invention.

Defendants' allege that Ying personally met with Chen, the inventor of the Hovertrax prototype, to discuss the Hovertrax and that Ying spoke with Chinese media in January 2016 about the Hovertrax, claiming that Chen's invention copied Ying's design. Additionally, Chen filed an International Trade Commission ("ITC") complaint against Hangzhou Chic regarding the '155 and '802 patents in March 2016. The ITC complaint

---

Defendants retracted their allegation that the Hovertrax has symmetrical inner covers or that Chen contradicted it. Defs.' Resp. 3 [60.2]; Chen Decl. 1 [62].

MEMORANDUM OPINION AND ORDER – PAGE 7

disclosed the Hovertrax prototype, which was debuted at U.S. toy fairs in 2012 and 2013, and a Kickstarter fundraising webpage for the Hovertrax, which contained schematics and videos of the prototype. Ying verified Hangzhou Chic's response to this ITC complaint.

While Plaintiffs argue that there is no evidence that Ying ever examined the Hovertrax or personally saw the kickstarter page beyond the Defendants' bald assertion, the Court disagrees. Taking the counterclaim allegations as true, Ying sought to patent a competing invention similar to Chen's prior prototype, a prototype that had been displayed in the U.S. and on the internet for years prior to Ying's patent application. The facts pled — that Ying spoke with Chen about the Hovertrax prototype directly, discussed the Hovertrax with media, and verified Hangzhou Chic's response to Chen's ITC complaint — suggest that Ying knew about the prototype and the Kickstarter webpage. As an inventor with a patent application for similar devices, it is also plausible that he investigated the prototype. The likelihood that Ying reviewed the Kickstarter webpage is made even more plausible by the allegation that he verified the response to the ITC complaint, which both challenged his asserted patents and discussed the prototype and Kickstarter webpage.

Likewise, the Court finds it plausible to infer that Ying made the misrepresentation about the '278 patent and the omission of the Hovertrax prototype and Kickstarter webpage with the intent to deceive the PTO and obtain the '155 patent. While both knowledge and intent "may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer" specific intent to deceive. *Exergen*, 575 F.3d at 1328–29. Here, Defendants claim that Ying had specific intent to deceive the PTO in part because Ying was attempting to

MEMORANDUM OPINION AND ORDER – PAGE 8

fraudulently procure a patent that conflicted with prior art of which Ying was aware. Defendants allege Ying intentionally misrepresented a core claim of the relevant prior art — an issue material to the patentability of Ying's invention — and that Ying made multiple omissions integral to patentability. Further, Defendants assert that Ying himself thought that the Hovertrax prototype was similar enough to his asserted patents to publicly claim that Chen had "copied" his patents. Defs. Answer and Counterclaim 21 [36]. If true, this is suggestive of the inference that Ying sought to misdirect the PTO because he did not want his asserted patents invalidated by a competing, prior patent and prototype. Although courts cannot infer intent from materiality alone, the Court finds that the pattern of mispresentation and omissions pled by Defendants, in conjunction with both the materiality of the actions and the facts suggesting Ying believed the prior art prototype conflicted with his patent, is sufficient to create a plausible inference that Ying intended to deceive the PTO. Because Defendants have pled plausible facts establishing the elements for inequitable conduct as to the '155 Patent, the Court denies the motion to dismiss this claim.

### B. Defendants Have Plausibly Alleged That the '802 Patent is Unenforceable for Inequitable Conduct

Defendants have alleged, and Plaintiffs do not deny, that the '802 Patent application was a continuation of the '155 patent application and named the same inventors, included the same prosecution history, and claimed priority to the same Chinese patent application. Defendants further state that Ying made the same misrepresentation and omissions with regard to the '802 patent application as he did with the '155 patent application. The viability of Defendants' inequitable conduct claim as to the '802 patent thus rises or falls

MEMORANDUM OPINION AND ORDER – PAGE 9

with that of the '155 patent. *See Nilssen v. Osram Sylvania*, 504 F.3d 1223, 1230 (Fed. Cir. 2007) ("[I]nequitable conduct with respect to one or more patents in a family can infect related applications."). Because the Court has determined that Defendants' sufficiently pled a claim of inequitable conduct as to the '155 Patent, the Court also denies the motion to dismiss the claim of inequitable conduct as to the '802 Patent.

### C. Defendants Have Not Plausibly Alleged That the D'723 Patent is Unenforceable for Inequitable Conduct

The inequitable conduct counterclaim as to the D'723 patent asserts that Ying breached his duty of candor to the PTO by listing himself as a co-inventor on the D'723 patent application, despite the fact that he was list as the sole inventor on a prior Chinese patent application describing the same patent. Although Defendants state that Ying failed to disclose this information "with the intent to deceive," this general assertion does not satisfy the heightened pleading requirements for inequitable conduct claims. Defs. Answer and Counterclaim 75 [36]. Defendants allege no supporting facts from which the Court can plausibly infer that Ying's failure to disclose the fact that he was the sole inventor listed on a related Chinese patent application was designed to deceive the PTO. It is not clear from the counterclaim what Ying stood to gain from listing a co-inventor on the D'723 patent application that might motivate him to withhold the inventorship information about the asserted Chinese patent. Because Defendants have not sufficiently alleged that Ying acted with specific intent to deceive the PTO, they have not stated a claim for inequitable conduct as to the D'723 patent.

### IV. THE COURT DENIES THE MOTION TO DISMISS THE LANHAM ACT, SHERMAN ACT, AND COMMON LAW UNFAIR COMPETITION COUNTERCLAIMS

Federal patent law permits parties to give notice of their patent rights to patent infringers and protects parties from antitrust and tort liability that is based on good-faith assertions of patent rights. 35 U.S.C. 287(a); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ([F]ederal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent."). Under the *Noer-Pennington* doctrine, a party's assertion of its patent rights does not support liability unless the assertion is made in bad faith and objectively baseless such that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Col. Pictures Indus.*, 508 U.S. 49, 60 (1993); *see Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343–44 (Fed. Cir. 1999).

Plaintiffs' primary argument for dismissal of the Lanham Act, Sherman Act, and common law unfair competition counterclaims is that the *Noer-Pennington* doctrine's protections for good-faith assertions of patent rights shields them against the counterclaims. This defense depends, as Plaintiffs admit, upon whether Defendants have plausibly alleged that Ying committed inequitable conduct in securing the patents, which would render them unenforceable, and whether Plaintiffs asserted the patents in bad faith.

The Court holds that Defendants sufficiently alleged that Plaintiffs' '155 and '802 patents are unenforceable for inequitable conduct and that Plaintiffs assertions were objectively baseless because "no reasonable litigant could expect to successfully assert a patent that it knew was obtained through knowing, willful fraud on the USPTO." Defs.

Answer and Counterclaim 45 [36].  Defendants plausibly pled bad faith by alleging that Plaintiffs: made infringement assertions to third-party sellers regarding GoLabs' competing products — despite knowing the patents were unenforceable for inequitable conduct; made systematic assertions of patent infringement to Amazon even after Amazon cleared those patents; and offered to dismiss Amazon from its lawsuit in exchange for the Amazon's delisting of GoLabs' products.  *Id.* at 33–36. Consequently, the *Noer-Pennington* doctrine does not require dismissal, and the Court addresses only alternative arguments for dismissal below.

### A. Defendants Have Stated a Lanham Act Section 43(a) Claim

As relevant here, section 43(a) of the Lanham Act provides that a party who "uses in commerce any . . . false or misleading representation of fact" regarding "any goods or services" is liable to anyone likely to be damaged by that act if that false representation will likely cause confusion, mistake, or deception regarding "commercial activities by another person."[5]  15 U.S.C. § 1125(a)(1)(A).  "A statement of fact" cognizable under the Lanham Act is one that is "capable of being proved false."  *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 235–36 (5th Cir. 2014) (internal quotations omitted).

---

[5] The Fifth Circuit has stated that claimants must generally allege "(1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 fn.3 (5th Cir. 1996); *see also Mission Pharm. Co. v. Virtus Pharm.*, LLC, 23 F. Supp. 3d 748, 758 (S.D. Tex. 2014).

MEMORANDUM OPINION AND ORDER – PAGE 12

Here, the facts pled plausibly support a section 43(a) claim. Defendants allege that in order to gain a commercial advantage, Plaintiffs repeatedly contacted GoLabs' customers, including Amazon and Walmart, claiming that various GoLabs hoverboard products violated several Hangzhou Chic patents. Defendants claim that Plaintiffs made these representations despite knowing its patents were unenforceable due to inequitable conduct by their inventor. Defendants also assert that Amazon removed GoLabs's products from its online site multiple times prior to restating the products after communicating with GoLabs and that Amazon fully delisted GoLabs's products after Amazon's dismissal from this suit. These facts support the inference that Plaintiffs' representations were false, that they misled at least one of GoLabs's third-party sellers, and that GoLabs has suffered financial and reputational injury as a result, as Amazon sales allegedly comprised nearly half of GoLabs's product sales. The Court thus denies the motion to dismiss this counterclaim.

### B. Defendants Have Stated a Common Law Unfair Competition Claim

To state a claim for unfair competition, Texas law requires that the claimant show the existence of an independent tort or other illegal conduct "which interfered with the plaintiff's ability to conduct its business." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000); *Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*, 2015 WL 13469916, at *5 (N.D. Tex. 2015) (stating that unfair competition "is a derivative tort and cannot stand on its own). Because the Court holds that Defendants have stated an independent claim under section 43(a) of the Lanham Act, the Court also finds that they have stated a common law unfair competition claim.

MEMORANDUM OPINION AND ORDER – PAGE 13

### C.  Defendants Have Stated a *Walker Process* *Claim and* a Sham Litigation Claim Under Section 2 of the Sherman Act

Claims brought under section 2 of the Sherman Act alleging attempted monopolization must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in the relevant market.  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456–58 (1993).  "Whether a relevant market has been identified is usually a question of fact," but pleadings may be legally insufficient if the claimant "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that does not clearly encompass all interchangeable substitute products."  *Apani S.W., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2000).  The Fifth Circuit requires that market allegations "correspond to the commercial realities of the industry and be economically significant."  *Id.*

Here, Defendants allege that Plaintiffs engaged in a pattern of malicious and systematic prosecution of competitors based on patents the Plaintiffs knew to be unenforceable.  Further, Defendants claim that the Plaintiffs routinely contacted Defendants' third-party sellers asserting GoLabs's products infringed Plaintiffs' patents and pressuring them to delist GoLabs's products, despite knowing that the patents they asserted were likely unenforceable and that the infringement claims were thus baseless.  Defendants also claim that Plaintiffs agreed to dismiss Amazon as a defendant from its lawsuit if it permanently delisted GoLabs's products.  The Court finds that these factual

MEMORANDUM OPINION AND ORDER – PAGE 14

allegations plausibly show that Plaintiffs engaged in predatory or anticompetitive product and that they intended to monopolize the U.S. hoverboard market.

Plaintiffs focus most of their arguments on the remaining element — the probability of attaining monopoly power in a given market — and argue that Defendants have both failed to identify the relevant market and do not show any probability of monopoly power. Specifically, Plaintiffs assert that the counterclaim references "at least three different markets without ever attempting to show that Plaintiff controls more than 10% of any market."[6] They argue, additionally, that there are no other allegations tending to suggest monopoly power, such as special market conditions, anticompetitive pricing, high barriers to entry, harm to consumers, price inelasticity, or nonsuitable alternatives.[7]

The counterclaim does provide statistics on hoverboard sales in the U.S. and globally and alleges that Plaintiffs are specifically focusing their anticompetitive efforts on the Amazon platform. Defendants expressly clarify, however, that "the relevant

---

[6] Plaintiffs argue that Defendants' failure to "allege that Plaintiffs control more than 10% of any relevant market" is fatal to its Sherman Act claims. Pltfs.' Mot. Dismiss 16 [51]; *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 491 (5th Cir. 1984) ("[A] market share of less than ten percent, as a matter of law, usually will not support a finding of attempt to monopolize."). The Fifth Circuit cases Plaintiff cites, however, are discussing the sufficiency of evidence necessary to prove antitrust claims, not pleading requirements for those claims. *See Domed Stadium Hotel, Inc.*, 732 F.2d at 491, 493; *Dimmitt Agri. Indus., Inc. v. CPC Int'l, Inc.*, 679 F.2d 516, 525–28 (5th Cir. 1982). These cases do not stand for the proposition that a claimant must always allege the specific percentage market share a defendant possesses at the Rule 12(b)(6) stage.

[7] While these are acceptable ways to show monopoly power, they are not necessary prerequisites to stating section 2 antitrust claims where the claimant has otherwise pled that a defendant has a probability of attaining market power.

MEMORANDUM OPINION AND ORDER – PAGE 15

geographic market is the United States." Defs.' Answer and Counterclaims 43 [36]. Amazon is a part of the U.S. market, and discussing Plaintiffs particular efforts regarding that online selling platform does not contradict Defendants' identification of the U.S. as the relevant geographic market.[8] Plaintiffs argue only that Defendants have not clearly identified the market and do not claim that the market as described is too narrow or economically insignificant such that it is legally insufficient. The Court thus holds that the allegations plausibly identifies the U.S. hoverboard market for purposes of the section 2 antitrust claims and that this market is not legally insufficient.

Regarding the probability of monopoly, Defendants allege that Hangzhou Chic has a substantial share of the U.S. hoverboard market, where is consistently ranked as one of the "top players and manufacturers in the industry," and that GoLabs is "one of the few remaining competitors" in that market. Defs.' Answer and Counterclaims 30, 37 [36]. Defendants also assert that Plaintiffs have sued other major players in the hoverboard market, extracting settlement agreements, and that GoLabs and another competitor being sued by Plaintiffs are both "smaller players." *Id.* at 30–33. Further, Defendants allege that there is a "dangerous probability" of Plaintiffs gaining a monopoly given Plaintiffs' lawsuits against various competitors and its concerted efforts to pressure third-party sellers into delisting competitors' products — including its tacit agreement to drop third-party

---

[8] Likewise, the Court disagrees that Defendants' singular use of the phrase "personal transporter market" creates confusion as to the product market Defendants are identifying when they otherwise consistently reference the product market as the "hoverboard market" throughout the entirety of their lengthy answer and counterclaims. *Compare* Defs.' Answer and Counterclaims 43 [36], *with id.* at 29–32, 36, 43, 45–46.

sellers from its lawsuits if they delist competitor products. *Id.* at 30–37. The Court holds that these factual allegations go beyond "a bare allegation that there is a dangerous probability that the defendant will successfully attain monopoly power" and are sufficient to plausibly show the third element. *See Zhejiang Med. Co. v. Kaneka Corp.*, 2012 WL 12893418, at *3 (S.D. Tex. 2012). Defendants have thus stated antitrust claims under section 2.

### IV. THE COURT DISMISSES THE TORTIOUS INTERFERENCE WITH CONTRACT COUNTERCLAIM

Under Texas law, a party claiming tortious interference with contract must show "(1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Some early Texas cases suggest it is possible to tortiously interfere with contracts even if they could be ended at-will without breach. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 (Tex. 1990); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). The Texas Supreme Court has recently clarified, however, that tortious interference with contract requires a breach of contract. *El Paso Healthcare Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). In *El Paso Healthcare Ltd. v. Murphy*, the Court did not overrule its earlier cases but did synthesize prior caselaw that suggested the "terminable-at-will status of a contract is no defense to an action for tortious interference with its performance" by noting those cases "involved claims for interference with *prospective* business relations." *Id.* at 421, fn.6.

Here, the answer and counterclaims do not allege that Plaintiffs' interference with Defendants' business relations led third parties to breach their contracts with Defendants. Plaintiffs argue, and Defendants do not dispute, that Defendants' contract with Amazon allowed the vendor to sell, and cease to sell, GoLabs's products at-will. Consequently, Amazon's decision to delist GoLabs's products from its site, even if prompted by Plaintiffs' actions, is not sufficient to establish tortious interference with contract. The Court dismisses this claim.

## CONCLUSION

The Court dismisses Defendants' tortious interference with business counterclaim and the inequitable conduct counterclaim as to the D'723 patent only. The Court declines to dismiss the inequitable conduct counterclaims as to the '155 and '802 patents and the Lanham Act, Sherman Act, and common law unfair competition counterclaims.

Signed March 20, 2020.

_David C. Godbey_
David C. Godbey
United States District Judge